UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRIAM RODRIGUEZ,<br><br>             Plaintiff,<br><br>        v.<br><br>WELLS FARGO BANK, INC.;<br>CHARANPREET SINGH; DOES 1<br>through 50, inclusive,<br><br>             Defendants. | No.  2:15-cv-01303-KJM-CMK<br><br><br><br>ORDER |

This matter is before the court on the motion for summary judgment, or, in the alternative, partial summary judgment, brought by defendants Wells Fargo Bank, Inc. (Wells Fargo) and Charanpreet Singh.  Mot., ECF No. 16.  Plaintiff Miriam Rodriguez opposed, Opp'n, ECF No. 27, and defendants replied, Reply, ECF No. 29.  The court has considered plaintiff's opposition despite its late submission in the interest of resolving the case on its merits.  Thus, plaintiff's request for late filing and for extension to file, ECF No. 28, is GRANTED.

As explained below, the court GRANTS defendants' motion as to all claims.

/////

/////

/////

I.      PROCEDURAL HISTORY

On April 21, 2015, plaintiff filed the Complaint against defendants Wells Fargo and Singh, alleging (1) gender discrimination under the Fair Employment and Housing Act (FEHA), California Government Code section 12940, *et seq.*, (2) retaliation by defendants under FEHA, California Government Code section 12940, *et seq.*, and California Constitution Article I, section 8, and (3) wrongful termination in violation of public policy.  Against defendant Wells Fargo only, plaintiff also alleges three additional claims: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, and (3) negligent supervision.  Plaintiff seeks damages, including punitive damages.

II.     EVIDENTIARY OBJECTIONS

Defendants submitted numerous objections to plaintiff's evidence, including the Rodriguez declaration, the Rodriguez deposition, the Singh deposition, and the Takahashi deposition.  Evid. Obj., ECF No. 29-1.  Many of defendants' objections attack the relevance, speculative nature and foundation of evidence offered.  "[O]bjections to evidence on the ground that it is irrelevant [and] speculative" are duplicative of the summary judgment standard.  *Powell v. Union Pac. R. Co.*, 864 F. Supp. 2d 949, 953 n.2 (E.D. Cal. 2012) (citing *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)) (emphasis omitted).  A court cannot rely on irrelevant or speculative facts in a motion for summary judgment.  Accordingly, defendants' relevance and speculative objections are overruled as redundant.

With respect to foundation, "documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).  Nevertheless, "[o]n summary judgment, evidence need not be in a form that is admissible at trial.  Accordingly, as long as a party submits evidence, which, regardless of its form, may be admissible at trial, it may be considered on summary judgment." *Collins v. Mendoza–Powers*, No. 06-1608, 2009 WL 453060, at *5 n.4 (E.D. Cal. Feb. 23, 2009) (citations omitted).  In some instances, foundation is apparent from the face of a document, *see, e.g.*, *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011), or it may otherwise be apparent that "substantive evidence could be made use of at trial,"

*Lindell v. Synthes USA*, 155 F. Supp. 3d 1068, 1072 (E.D. Cal. 2016) (citation and quotation marks omitted).  Because it appears the evidence defendants challenge may be admissible at trial, defendants' general foundational objections are overruled unless specifically stated otherwise below.

With respect to the Singh deposition, defendants object to the deposition in whole because the transcript lacks the signature of the court reporter.  The nonmoving party does not need to produce evidence in a form that would be admissible at trial in order to avoid summary judgment as long as the party satisfies the requirements of Rule 56(e).  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Furthermore, defendants do not dispute the contents of the Singh deposition.  With respect to the two facts that defendants dispute—Singh's lack of training with respect to body language and Singh's response to transposition of numbers—the court does not find them relevant to the motion at hand.  Defendants' objection to the Singh deposition is also overruled.

Regarding defendants' objection to plaintiff's statement in her declaration and deposition that Singh removed accounts from her, plaintiff did not actually hear or see Singh discuss or perform such actions.  Rodriguez Decl. at 2; Rodriguez Dep. 177:2–5.  The court finds these statements are speculative as well as inadmissible hearsay, because plaintiff seeks to admit them for their truth.  Fed. R. Evid. 802; *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778–79 (9th Cir. 2002).  Defendants' objections to these statements are GRANTED.

Finally, with respect to the balance of defendants' evidentiary objections, because they are not necessary to resolve the motion, the court DENIES these objections as moot.

III.    UNDISPUTED FACTS

Plaintiff is a Hispanic female.  *See* Rodriguez Decl., ECF No. 27-3 at 2.  She was hired in 2006 as a business banking specialist.  Rodriguez Dep. 21:11–14, 32:23–33:8.  When plaintiff was hired, she signed a document, titled "Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions," acknowledging she was an at-will employee.  Rodriguez Dep. 20:16–22:1, Defs.' Ex. B-1, ECF No. 16-2.  At hearing, both parties affirmed she was an at-will employee.

During her employment with Wells Fargo, plaintiff received and signed a document acknowledging Wells Fargo's code of conduct and business ethics policies. *Id.* 127:12–25, 234:10–18, 235:3–14; Defs.' Exs. B-5 & B-13. On the "Code of Ethics/Business Conduct Review & Acknowledgement Form," plaintiff initialed each section individually. Defs.' Ex. B-5. One section, titled "Accurate Records," provides that plaintiff understands she is "responsible for maintaining accurate records to the best of [her] knowledge . . . . It is a violation to falsify any . . . customer . . . records and/or documentation for any purpose whatsoever." *Id.* In the two "Team Member Acknowledgement" documents, plaintiff agreed to read and adhere to the provisions of Wells Fargo's Code of Ethics and Business Conduct. Defs.' Exs. B-6 & B-7.

Plaintiff returned from maternity leave in January 2013. Rodriguez Dep. 29:14-24. Singh was plaintiff's supervisor from January to June 2013. *Id.* 31:5–10. Plaintiff testified that Singh's behavior, which ultimately made her resign, included pushing her to recommend products that were confusing and unethical to customers, such as encouraging customers to open additional checking or saving accounts. *Id.* 29:19–30:19, 140:9–23. Other things Singh asked plaintiff to do included inflating income on loan applications, *id.* 145:2–7, inputting an upset customer's cell phone number for future customer surveys to avoid negative survey responses, *id.* 148:1–12, and giving business accounts to bankers other than plaintiff, *id.* 177:2–5. Because plaintiff would not follow such directions, plaintiff testified that Singh would tell her things such as "if you're going to be an order-taker, then you're going to end up working at McDonald's," or "[y]ou're going to get a write-up. You know what happens if you don't meet your numbers." *Id.* 140:24–25, 141:1–14. Singh also did not allow overtime. *Id.* 109:15–112:22. Plaintiff testified that Singh constantly made jokes "about a woman having a lot of kids, about Mexicans, sexist jokes . . . ." *Id.* 155:24–156:8.

On May 22, 2013, Jodi Takahashi, a corporate investigator for Wells Fargo, opened an investigation regarding possible misconduct by plaintiff after receiving a complaint through Wells Fargo's Ethics Line with respect to a customer who could not access his bank account. Takahashi Decl. ¶ 4, ECF No. 16-2 at 15; Defs.' Ex. B-3. As part of the investigation, Takahashi interviewed plaintiff on June 10, 2013, and plaintiff provided a written statement.

Takahashi Decl. ¶ 5; Defs.' Ex. B-3.  During the interview, plaintiff told Takahashi that she met with L.S., the customer, outside of the branch and wrote down the information necessary to open a new business banking account on an unspecified date.  Takahashi Decl. ¶ 5.  Plaintiff inadvertently recorded an incorrect expiration date.  *Id.*  Plaintiff subsequently requested that L.S. come into the branch so plaintiff could verify the correct expiration date and update the date in Wells Fargo's system.  *Id.*  However, on June 5, 2013, prior to L.S.'s visit to Wells Fargo, plaintiff entered an unverified date into the system.  Defs.' Ex. B-3.  Records of the ethics complaint filed against plaintiff and her written account of the interview show that plaintiff conceded she entered an unverified driver's license number without waiting for the customer to come into the bank.  *Id.*  During the interview between Takahashi and plaintiff, Singh was present as well.  Singh Decl. 25:4–5.  Takahashi requested that Singh evaluate plaintiff's body language during the interview.  *Id.* 25:15–17.  Singh, however, was unable to recall what question was asked by Takahashi and what he answered in response.  *Id.* 26:3–27:19.  In the midst of Takahashi's investigation, plaintiff voluntarily resigned on June 21, 2013 after providing two weeks' notice on June 7, 2013.  Defs.' Ex. B-2.

On June 10, 2013 based on the interview and plaintiff's written statement, Takahashi ultimately determined that plaintiff had falsified L.S.'s bank record and should be coded "ineligible for rehire" in Wells Fargo's system.  Takahashi Decl. ¶ 10; Defs.' Ex. E.  On July 8, 2013, Takahashi formally requested that plaintiff be coded as ineligible for re-hire.  Defs.' Ex. E.  On July 11, 2013, employee relations manager Deborah Cook acted on this recommendation and coded plaintiff ineligible for rehire.  Cook Decl. ¶¶ 3–4, ECF No. 16-2 at 7-8.  On July 16, 2013, Wells Fargo submitted Form U5, as required by the Financial Industry Regulatory Authority (FINRA), stating that plaintiff voluntarily resigned from her employment and that plaintiff violated investment-related statutes by falsifying bank records.  Graham Decl. ¶ 4, ECF No. 16-2 at 10–11; Defs.' Ex. G.  Specifically, the Form U5 noted that "[plaintiff] opened a bank account without valid identification and entered an invalid expiration date for the account profile."  Defs.' Ex. G.

1            On July 16, 2013, defendant Wells Fargo sent a letter to plaintiff as required by
2    FINRA with an attached copy of her Form U5 Termination Notice.  Stancu Suppl. Decl., Ex. A,
3    ECF No. 29-2.  The letter noted that plaintiff's securities registration would expire two years from
4    her termination date unless she transferred the registration to another broker or dealer prior to its
5    expiration.  *Id.*; *see also* Defs.' Ex. G.  Plaintiff filed a complaint with the California Department
6    of Fair Employment and Housing (DFEH) on July 14, 2014.  Defs.' Ex. A-1.

7    IV.    <u>LEGAL STANDARD</u>

8            A court will grant summary judgment "if . . . there is no genuine dispute as to any
9    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A
10   trial court in receipt of a motion for summary judgment performs a "threshold inquiry" to decide
11   "whether there is the need for a trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
12   The court does not make findings of fact, but decides more fundamentally whether "there are any
13   genuine factual issues that properly can be resolved only by a finder of fact because they may
14   reasonably be resolved in favor of either party."  *Id.*  Only "genuine issue[s] of material fact"
15   matter; only "disputes over facts that might affect the outcome of the suit under the governing law
16   will properly preclude the entry of summary judgment."  *Id.* at 247–48.

17           Those moving for summary judgment, here defendants, bear the initial burden of
18   "informing the district court of the basis for [the] motion."  *Celotex*, 477 U.S. at 323.  Rule 56
19   does not require defendants to negate plaintiff's claims with evidence.  *Id.*  Rather, defendants
20   must show "there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.
21   If defendants meet this burden, plaintiff must then respond and show the case is in fact proper for
22   trial, that is, she must "establish that there is a genuine issue of material fact . . . ."  *Matsushita*
23   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  Both parties must "cit[e] to
24   particular parts of materials in the record . . .; or show[ ] that the materials cited do not establish
25   the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible
26   evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Unsupported assertions are insufficient.
27   *Id.* at 587.  Finally, because defendants have moved for summary judgment, the court draws all
28

inferences and views all evidence in the light most favorable to plaintiff, the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

V.     DISCUSSION

    A.     FEHA Claims

          Plaintiff alleges gender discrimination and retaliation under FEHA, California Government Code section 12940, subsections (a) and (h), against both defendants Wells Fargo and Singh. Compl. ¶¶ 7–24. Defendants move for summary judgment on plaintiff's FEHA claims against both Wells Fargo and Singh, arguing plaintiff did not timely exhaust her administrative remedies. Plaintiff resigned in June 21, 2013, but did not file the complaint with DFEH until July 14, 2014, outside the one-year limitations period. Mem. P. & A., ECF No. 16-1 at 7–8. Plaintiff contends the most recent unlawful conduct triggering her need to file occurred on July 16, 2013, the date Wells Fargo submitted the Form U5 to FINRA, and thus she properly filed within the one-year time period. Opp'n at 5.

          FEHA makes it illegal for any employer to "discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" based on gender. Cal. Gov't Code § 12940(a). FEHA also prohibits any employer from "discharg[ing], expel[ling], or otherwise discriminat[ing] against any person because the person has opposed any practices forbidden under [FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." *Id.* § 12940(h). FEHA provides that subject to certain statutory exceptions, "[n]o [administrative] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." Cal. Gov't Code § 12960(d). "[A]ny conduct occurring [outside this time frame] cannot serve as the basis for liability [under FEHA] unless some exception to the one-year limitations period applies." *Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1040 (2002).

          Section 12960, subdivision (d), identifies four exceptions to FEHA's one-year limitations period. *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 106–07 (2008)

(citing Cal. Gov't Code § 12960(d)(1)–(4)). [1] Only the first exception, delayed discovery of the unlawful practice or the continuing violation doctrine, is relevant here. Cal. Gov't Code § 12960(d)(1) (ninety-day extension allowed after expiration of the limitations period in instances of delayed discovery of the unlawful practice, or continuing violation); *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 801–02 (2001) ("[T]he continuation violation doctrine constitutes an exception to FEHA's one-year limitations period").

First, the court considers whether plaintiff benefits from the delayed discovery provision. At the time plaintiff resigned, she knew about the alleged discrimination, which she says occurred during her employment. She complained to district manager Hassib Rostami numerous times regarding Singh's conduct. Rodriguez Dep. 166:20–167:8. She also testified that she resigned because of Singh's conduct. Rodriguez Dep. 140:9–25, 141:1–14, 145:2–7, 148:1–12, 155:24–156:8. "[A] continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, [she] was being discriminated against at the time the earlier events occurred." *Morgan*, 88 Cal. App. 4th at 65. In this case,

---

[1] California Government Code section 12960(d) provides:

(d) No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred, except that this period may be extended as follows:

> (1) For a period of time not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence.
>
> (2) For a period of time not to exceed one year following a rebutted presumption of the identity of the person's employer under Section 12928, in order to allow a person allegedly aggrieved by an unlawful practice to make a substitute identification of the actual employer.
>
> (3) For a period of time, not to exceed one year from the date the person aggrieved by an alleged violation of Section 51.7 of the Civil Code becomes aware of the identity of a person liable for the alleged violation, but in no case exceeding three years from the date of the alleged violation if during that period the aggrieved person is unaware of the identity of any person liable for the alleged violation.
>
> (4) For a period of time not to exceed one year from the date that a person allegedly aggrieved by an unlawful practice attains the age of majority.

plaintiff had knowledge of the discriminatory actions at the time she resigned. This precludes the argument of delayed discovery by plaintiff.

Next, the court considers whether plaintiff may rely on a continuing violation to extend the filing date. "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1192 (2013). A continuing violation may be established by demonstrating "a company wide policy or practice" or "a series of related acts against a single individual." *Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1480 (9th Cir. 1989). Here, the focus is on whether there was "a series of related acts against a single individual," because plaintiff argues she was "declared unhireable because of the [d]efendants' retaliatory conduct toward her . . . ." Opp'n at 5. Plaintiff does not argue there was a "company wide policy or practice."

To show a continuing violation through "a series of related acts against a single individual . . . , [the] question . . . boils down to whether sufficient evidence supports a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation." *Green*, 883 F.2d at 1480 (internal quotations omitted). The "continuing violation doctrine 'is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated.'" *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 65 (2000) (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 (10th Cir. 1999)); *see also Richards*, 26 Cal. 4th at 813–14.

Here, the question is whether the determination that plaintiff falsified information on a customer's bank records, and the decision to make plaintiff ineligible for rehire are part of a series of related acts against plaintiff, constituting a continuing violation. Plaintiff voluntarily resigned on June 21, 2013 after submitting two-week notice on June 7, 2013. Defs.' Ex. B-2. Plaintiff did not file her complaint with DFEH until July 14, 2014. Plaintiff does not allege any facts to show she interacted with Singh after she resigned and left her employment. If plaintiff's last day at work, thus her last day of interaction with Singh, is taken as the date of the most recent unlawful conduct, then plaintiff's claim is barred by the one-year statute of limitations. However,

1  if Wells Fargo's determination that plaintiff falsified L.S.'s bank record is deemed the most
2  recent unlawful conduct, and plaintiff did not receive news of such decision until her receipt of
3  the FINRA notice after July 16, 2013, Rodriguez Dep. 187:14–20, 188:11–19, then the exception
4  provided by section 12960(d)(1) would apply.

5  Even drawing all inferences in favor of plaintiff, a reasonable jury cannot conclude
6  from the evidence presented here that Takahashi's investigation and the subsequent decision to
7  code plaintiff as ineligible for rehire is part of any course of retaliatory action that includes the
8  alleged discriminatory acts committed by Singh. Although plaintiff argues that Singh was present
9  at the interview conducted by Takahashi, Singh Dep. 23:18–25, Opp'n at 6–8, records of the
10 ethics complaint filed against plaintiff and her written account of the interview show that plaintiff
11 conceded she entered an unverified driver's license number without waiting for the customer to
12 come into the bank. Defs.' Ex. B-3. This was directly in violation of Wells Fargo's ethical
13 guidelines, as provided in the documents that plaintiff signed during her employment. Wells
14 Fargo's investigation into plaintiff thus presents a separate, discrete act with decisions made by
15 different decision makers. Defs.' Exs. B-5, B-6, B-7; *see Morgan*, 88 Cal. App. 4th at 65–66.
16 Takahashi and Cook both aver that Singh did not provide any input into their decisions with
17 respect to plaintiff, Takahashi Decl. ¶ 11; Cook Decl. ¶ 5, and plaintiff does not dispute their
18 representations. Takahashi stated she opened the investigation on plaintiff after receiving a
19 complaint through Wells Fargo's Ethics Line. Takahashi Decl. ¶ 4. Though plaintiff argues
20 Singh was present during Takahashi's interview with plaintiff, it is unclear what input he
21 provided to Takahashi other than vague responses about plaintiff's body language. Opp'n at 6–7;
22 *see also* Singh Dep. 25:4–27:23. Cook's decision to approve coding plaintiff as ineligible for
23 rehire was based on Takahashi's investigation and information provided by employee relations
24 consultant Diana Brandenburg. Cook Decl. ¶ 3. Plaintiff did not point to any evidence in the
25 record to dispute Cook's decision. No reasonable jury could find that the investigation and the
26 subsequent determination that plaintiff violated Wells Fargo's ethical guidelines were related to
27 the allegedly discriminatory actions by Singh.
28

At hearing, plaintiff argued her securities industry registration was revoked by Wells Fargo in a retaliatory manner, as evidenced by the letter she received from Wells Fargo in July 2013. However, the letter does not support plaintiff's argument as it does not revoke plaintiff's registration. Rather, the letter informs plaintiff her "registration will expire two (2) years from her termination date, unless you transfer your previously active registration to another broker/dealer firm prior to expiration." Stancu Supp. Decl., Ex. A. Defendant Wells Fargo did not revoke plaintiff's registration. It merely informed plaintiff that her registration will expire given she no longer worked for a broker/dealer firm. Though a reasonable juror might find the expiration of plaintiff's registration resulted from the termination of her employment with Wells Fargo, plaintiff has not shown the termination itself was part of a series of retaliatory actions by Wells Fargo.

Plaintiff's FEHA claims are barred by the statute of limitations, given her failure to timely exhaust. Defendants' motion for summary judgment on these claims on jurisdictional grounds is GRANTED.

B.  Wrongful Termination in Violation of Public Policy

Defendants also move for summary judgment on plaintiff's claim of wrongful termination in violation of public policy against defendant Wells Fargo, arguing plaintiff resigned and was not constructively discharged. Mem. P. & A. at 12. Defendants argue there was no violation of public policy, because plaintiff has not shown any possibility of a nexus between any protected activities in which she engaged and the misbehavior that allegedly forced her to resign. *Id.* at 17. Plaintiff contends the combination of being pressured to sell unnecessary accounts to customers, inflate customers' information on loan applications, jokes from Singh with respect to Mexican women and pregnancies, replacement of female employees by male employees, and threats of firing employees who did not meet their sales goals "added up to an extremely hostile environment" that forced her to resign. Opp'n at 11–12. Plaintiff further contends there is a

nexus between plaintiff's resignation and Wells Fargo's subsequent decision to make plaintiff ineligible for rehiring.[2]  Opp'n at 9.

Plaintiff titles this claim in her complaint as "Wrongful Termination in Violation of Public Policy," and reiterated at hearing that she was "wrongfully terminated."  However, it is undisputed plaintiff was not fired by defendant Wells Fargo.  Defendants correctly construe the claim as one of "constructive wrongful discharge in violation of public policy."

To establish a constructive discharge claim, plaintiff must show that "the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of [plaintiff's] resignation that a reasonable employer would realize that a reasonable person in [plaintiff's] position would be compelled to resign."  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994).  "To be 'intolerable' or 'aggravated,' [plaintiff's] working conditions must be 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve . . . her employer.'"  *Id.* at 1246.  "The standard by which a constructive discharge is determined is an objective one—the question is 'whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit.'"  *Id.* at 1248 (quoting *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 212 (1993)).  If plaintiff establishes a constructive discharge, she then needs to show there is a nexus between the alleged gender discrimination and adverse treatment by defendants.  *Turner*, 7 Cal. 4th at 1258.  The court first considers the constructive discharge element.

The relevant question is whether Singh's behavior would cause a reasonable person to have no alternative other than to quit.  Defendant does not dispute that Singh's behavior consisted of:  (1) asking plaintiff to sell customers additional accounts, (2) asking plaintiff to add income to customers' loan applications, (3) telling employees to list cell phone numbers for surveys to avoid negative feedback, (4) making jokes about Mexican women and pregnancies, (5)

---

[2] The court notes this argument contradicts plaintiff's arguments with respect to FEHA, in which she says that Wells Fargo terminated her employment in retaliation against her.

sending business banking customers to bankers other than plaintiff, (6) restricting bankers' overtime, and (7) informing plaintiff if she did not meet her sales goals, she would end up at McDonalds.  *See* Rodriguez Dep. 40:3–6, 140:9–149:8, 155:24–156:8, 156:19–21, 157:11–24, 159:11–16, 169:21–170:25.

First, the combined effect of asking plaintiff to sell products and services, add income and record cell phone numbers for surveys, as well as prohibiting overtime and telling plaintiff she would end up at McDonald's does not amount to "intolerable" or "aggravated" working conditions.  With respect to selling products and services, recording cell phone numbers to avoid negative feedback from angry customers, and prohibiting overtime, while plaintiff may disagree with Singh on these matters, disagreement with a supervisor's opinion and management of personnel alone is insufficient to show constructive discharge.  Such disagreement is not "extraordinary" or "egregious."  *See Turner*, 7 Cal. 4th at 1246.  Even when an employee disagrees with actions taken by an employer that she believes are illegal, the California Supreme Court has found such disagreement to be insufficient to surmount the requirement of "extraordinary" or "egregious."  *See Turner*, 7 Cal. 4th at 1254 (finding "existence of illegal conduct in a workplace does not, without more, render employment conditions intolerable to a reasonable employee.").  "In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be intolerable."  *Id.* at 1247 (footnote omitted).

Plaintiff concedes she was never punished, or written up, for ignoring those instructions.  Rodriguez Dep. 150:11–151:3.  In sum, plaintiff was not required to participate in any of the conduct, illegal or not, she points out.  *See Turner*, 7 Cal. 4th at 1254.  Plaintiff alleges in the complaint that she was "forced to terminate her employment solely as a consequence of the severe, continuing and focused gender discrimination."  Comp. ¶ 26.  Plaintiff points to no evidence in the record to show she was forced to act illegally in any way, whether based on her gender or otherwise.  Plaintiff has not sufficiently carried her burden so as to withstand summary judgment.

1 Plaintiff also notes that Singh told all employees they were not allowed to take
2 overtime. *Id.* 108:21–109:2. Although plaintiff argues she later found out other employees were
3 taking overtime, it is unclear if the other employees were women, or if they performed a different
4 job function than plaintiff. Plaintiff's testimony alone does not provide a genuine issue of
5 material fact that Singh disallowed plaintiff overtime simply because she was a woman.

6 Regarding Singh's comment that plaintiff would end up at McDonalds,
7 "[d]emotion of an employee or criticism of his job performance—even if alleged to be unfair or
8 outrageous—does not . . . create the intolerable working conditions necessary to support a claim
9 of constructive discharge." *Gibson v. Aro Corp.*, 32 Cal. App. 4th 1628, 1636 (1995) (citing
10 *Soules v. Cadam, Inc.*, 2 Cal. App. 4th 390, 401 (1990)). "In order to properly manage its
11 business, every employer must on occasion review, criticize, demote, transfer and discipline
12 employees." *Id.* at 1637 (citing *Soules*, 2 Cal. App. 4th at 401).

13 With respect to Singh allegedly giving accounts to other bankers, although
14 plaintiff argues certain reports show how many business accounts and products are sold by other
15 bankers, she has not provided any admissible evidence that she had personal knowledge Singh
16 gave specific business accounts to other bankers. Rodriguez Dep. 212:9–213:20. Plaintiff has
17 presented no evidence other than hearsay statements that she felt or heard Singh was giving
18 business accounts to others.

19 Last, regarding Singh's alleged jokes regarding Mexican women and children,
20 plaintiff testified that he made at least five jokes after plaintiff returned from her maternity leave,
21 and she told him not to say such things. *Id.* 156:19–158:14, 163:12–14. Plaintiff further testified
22 that she told Rostami, who had previously talked to Singh about these jokes. *Id.* 166:20–167:8.
23 Even drawing all inferences in plaintiff's favor, a reasonable juror would not be able to find five
24 jokes spanning the six-month period Singh oversaw plaintiff as "sufficiently extraordinary and
25 egregious." As the California Supreme Court pointed out "[s]ingle, trivial, or isolated acts of
26 [misconduct] are insufficient to support a constructive discharge claim." *Turner*, 7 Cal. 4th at
27 1247 (brackets in the original and internal quotations omitted). Intermittent jokes are simply not
28 sufficient to "overcome the normal motivation of a competent, diligent, and reasonable employee

to remain on the job to earn a livelihood . . . ." *Id.* at 1246. "In order to amount to a constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Id.* at 1247. This is not a hard and fast rule. The California Supreme Court stated that "a single intolerable incident, such as a crime of violence against an employee by an employer, or an employer's ultimatum that an employee commit a crime, may constitute a constructive discharge. Such misconduct potentially could be found 'aggravated.'" *Id.* n.3. No such misconduct is alleged in this case.

Accordingly, the court finds plaintiff was not constructively discharged, and does not need to reach the issue of required nexus. Defendants' motion for summary judgment on plaintiff's wrongful termination in violation of public policy is GRANTED.

C. <u>Breach of Contract</u>

Defendants move for summary judgment on plaintiff's breach of contract claim against defendant Wells Fargo, arguing plaintiff was an at-will employee and ended her employment voluntarily by resigning. Mem. P. & A. at 17. Plaintiff does not dispute defendants' argument. Instead, plaintiff contends that Rostami, the district manager, reached an agreement with plaintiff to give her a letter of recommendation and place her on the rehire list. Opp'n at 12. Plaintiff argues that defendants breached that agreement when she was informed on July 16, 2013 that she was terminated and not to be rehired. *Id.*

The complaint does not allege the existence of an agreement between plaintiff and Rostami or the breach of any such agreement. At hearing, plaintiff conceded as much. A party cannot oppose summary judgment on grounds not put at issue in the pleadings. *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). And no evidence in the record supports an amendment at this late stage.

While there is a statutory presumption of the kind of at-will employment defendants say existed here, the presumption is subject to several limitations. *See* Cal. Labor Code § 2922. The statute applies where the employer and employee have reached no other understanding; it does not overcome their "fundamental . . . freedom of contract" to depart from at-will employment. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 677 (1986). An employer

1  and employee, for example, may enter into an agreement to continue the employment relationship
2  indefinitely until termination for "good cause." *See Guz*, 24 Cal. 4th at 1100–01 (citing *Foley*,
3  47 Cal. 3d at 680). Here, plaintiff's complaint alleges an oral contractual agreement, which
4  provided plaintiff could not be discharged other than for "good cause." Compl. ¶ 31. However,
5  plaintiff points to no evidence in the record to support this allegation. In fact, she conceded at
6  hearing that she had been an at-will employee.

   Defendants' motion for summary judgment on plaintiff's breach of contract claim is GRANTED.

   D.   Breach of Implied Covenant of Good Faith and Fair Dealing

   As in other analogous cases, "because there was no breach of contract, [plaintiff's] claim for breach of the implied covenant of good faith and fair dealing also fails." *Forest Meadows Owners Ass'n v. State Farm General Ins. Co.*, 569 F. Appx. 523, 525 (9th Cir. 2014) (unpublished) (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal 4th 1, 44 (1995)). Defendants' motion for summary judgment on plaintiff's breach of implied covenant of good faith and fair dealing is GRANTED.

   E.   Negligent Supervision

   Plaintiff did not oppose and has offered no evidence to counter defendants' motion with respect to her negligent supervision claim. At hearing, plaintiff conceded this claim. Moreover, a negligent supervision claim based on an employee's FEHA claims, as here, cannot be sustained where the FEHA claims do not survive. *Jones v. Dep't of Corrections and Rehabilitation*, 152 Cal. App. 4th 1367, 1384 (2007). Defendants' motion for summary judgment on the negligent supervision claim is GRANTED.

   F.   Punitive Damages

   Lastly, the court reaches defendants' motion for summary judgment on plaintiff's request for punitive damages, made in connection with her FEHA and wrongful termination claims. California Civil Code section 3294, subdivision (a), authorizes recovery of punitive damages in a tort action if there is clear and convincing evidence that the defendant has exhibited "oppression, fraud, or malice." *Shade Foods v. Innovative Products Sales & Marketing, Inc.*, 78

Cal. App. 4th 847, 890–91 (2000). "Oppression" is defined to mean "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* at 891. "Malice" is defined to mean "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* "Used in its ordinary sense, the adjective 'despicable' is a powerful term that refers to circumstances that are 'base,' 'vile,' or 'contemptible.'" *Id.* With regard to the evidence required to support an award of punitive damages, the same evidence is relevant to both the finding of bad faith and the imposition of punitive damages, but "[t]he conduct required to award punitive damages for the tortious breach of contract is of a different dimension [than that required to find bad faith]." *Id.* "The evidence in support of the award of punitive damages must satisfy a distinct and far more stringent standard." *Id.* "Clear and convincing evidence requires a finding of high probability . . . '[the evidence must be] so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.'" *Id.*

Given plaintiff is unable to present viable claims for basic liability on her FEHA and wrongful termination claims, plaintiff has not adduced "clear and convincing" proof under California's heightened standard for punitive damages that defendants acted with oppression, fraud, or malice with respect to plaintiff. *Cf. Larkin v. Home Depot, Inc.*, No. 13-2868, 2015 WL 1049716, at *3 (N.D. Cal. Mar. 9, 2015). Defendants' motion for summary judgment against plaintiff's request for punitive damages is GRANTED.

VI.     <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion for summary judgment, ECF No. 16, is GRANTED in full. The parties' stipulated request to extend the expert discovery cutoff from October 7, 2016 to November 30, 2016, ECF No. 40, is DENIED as MOOT. Plaintiff's request for late filing and for extension to file, ECF No. 28, is GRANTED. This order resolves ECF Nos. 16, 28, 40. The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

DATED: September 2, 2016.

UNITED STATES DISTRICT JUDGE